194 P.3d 1000 (2008)
STATE of Washington, Respondent,
v.
Ronald APPLEGATE, Appellant.
No. 56085-9-I.
Court of Appeals of Washington, Division 1.
October 20, 2008.
*1001 Oliver Ross Davis, David L. Donnan, Washington Appellate Project, Seattle, WA, for Appellant.
Hilary A. Thomas, Whatcom County Prosecutors Office, Bellingham, WA, for Respondent.
ELLINGTON, J.
¶ 1 Shortly before Ronald Applegate's 2004 trial, the United States Supreme Court invalidated exceptional sentences based upon aggravating factors found by a judge, and ruled such factors must be submitted to the trier of fact. Washington's Sentencing Reform Act of 1981,[1] (SRA) did not then authorize the court to submit aggravating factors for jury determination. Correctly anticipating such an amendment, Applegate's trial judge submitted aggravating factors to the jury. The SRA now permits courts to submit aggravating *1002 factors for jury determination no matter when a defendant's original trial or sentencing occurred. The State contends that, given the amendment, any error is harmless. This appears a sensible approach. Unfortunately, however, such interim sentencings have been held void as unauthorized, and the harmless error doctrine cannot resurrect a void proceeding. We therefore remand for resentencing. We hold the 2007 amendment will apply on remand. We otherwise affirm.

BACKGROUND
¶ 2 In 1996, Applegate was charged with six counts of rape of a child in the second degree for offenses committed against his stepdaughter and niece in 1988 and 1989. Applegate fled to Oregon and lived under an alias. He was not arrested until 2004.
¶ 3 Several months before Applegate's trial, the United States Supreme Court decided Blakely v. Washington,[2] holding that Washington's system for imposing exceptional sentences violated the Sixth Amendment, and that aggravating factors justifying such sentences must be proved to the trier of fact beyond a reasonable doubt. The prosecutor in Applegate's case then filed a pretrial notice alleging three aggravating factors to be "submitted to the trier of fact pursuant to Blakely":[3] that the offenses were part of an ongoing pattern of domestic violence, were part of an ongoing pattern of sexual abuse, and resulted in the pregnancy of one of the child victims.
¶ 4 The jury found Applegate guilty on all counts and found each of the aggravating factors proved beyond a reasonable doubt. The trial court found that any one of the aggravating factors was a substantial and compelling reason justifying imposition of an exceptional sentence, and imposed the statutory maximum of 10 years.

DISCUSSION

Exceptional Sentence
¶ 5 In response to Blakely, the Washington legislature enacted former RCW 9.94A.537 (Laws of 2005, ch. 68, § 1) (known as the Blakely fix), to bring the SRA into accord with Blakely. The Blakely fix authorized trial courts to empanel juries to consider aggravating factors supporting exceptional sentences.[4]
¶ 6 Thereafter, in State v. Pillatos,[5] the Washington Supreme Court upheld the Blakely fix. In doing so, the court reiterated its previous holdings[6] that trial courts do not have inherent authority to empanel sentencing juries, and held that the Blakely fix statute, by its terms, applies only to cases pending trial before its effective date.[7]
¶ 7 Applegate's trial took place before the effective date of the Blakely fix. The State concedes the court lacked authority to submit the aggravating factors to the jury.[8] Applegate argues we must remand for resentencing within the standard range, as our courts have done in other cases.[9]
¶ 8 However, in response to Pillatos, the legislature again amended the SRA in 2007, expressly authorizing courts to empanel juries to decide aggravating factors "in all cases that come before the courts for trial or sentencing, regardless of the date of the original trial or sentencing."[10] RCW 9.94A.537 now provides, in part:

*1003 (2) In any case where an exceptional sentence above the standard range was imposed and where a new sentencing hearing is required, the superior court may impanel a jury to consider any alleged aggravating circumstances listed in RCW 9.94A.535(3), that were relied upon by the superior court in imposing the previous sentence, at the new sentencing hearing.
¶ 9 The plain language of the current version of the SRA thus authorizes the court to empanel a jury on remand to make the factual findings necessary to support an exceptional sentence in Applegate's case.

Application of the 2007 Amendment
¶ 10 Applegate nevertheless argues the 2007 amendment cannot be applied to him. Based upon its reading of Pillatos, Division Two of this court rejected identical arguments in State v. McNeal.[11] We agree with Division Two, and adopt the same reasoning here, as discussed below.
¶ 11 Presumption Against Retroactivity. Applegate first contends[12] it would be improper to apply the 2007 amendment retroactively to his case. But like the 2005 Blakely fix, the 2007 amendment is procedural in nature, does not alter the legal consequences of Applegate's conduct, and is triggered not by the criminal act itself but by the sentencing hearing on remand. Accordingly, like the Blakely fix, it is neither retroactive nor retrospective.[13] Additionally, the general rule that statutes operate prospectively does not apply to remedial statutes; like the 2005 amendment, the 2007 amendment is remedial because it relates only to procedure and does not affect substantive or vested rights.[14]
¶ 12 Ex Post Facto. Applegate also argues the 2007 amendment violates the ex post facto clause because it permits a greater punishment for the crime than could have been constitutionally imposed when the crime was committed. Pillatos rejected the same argument as to the 2005 amendment, observing that "the key is whether the defendant had notice of the punishment at the time of the crime, not whether in some metaphysical sense, a constitutional statute existed at the time of the crime."[15] At the time of Applegate's offense, the SRA authorized exceptional sentences. It thus provided sufficient notice of the possibility of such a sentence in Applegate's case.
¶ 13 Additionally, as the McNeal court explained, in order to violate the ex post facto clause, a statute must disadvantage the person affected by it.[16] The 2007 amendment does not increase the punishment to which Applegate was subject beyond what was already possible when he committed his offenses; rather, the new procedure "merely allows a jury, rather than the court, to make factual determinations supporting exceptional sentences."[17] Further, the new procedure "arguably decreases [the] risk of receiving an exceptional sentence[.] . . . [T]he jury is required to find the aggravating factors beyond a reasonable doubt. In contrast, under the previous procedure, the trial court could find these factors by a mere preponderance of the evidence."[18] There is no ex post facto violation.
*1004 ¶ 14 The 2007 amendments apply to Applegate.

Harmless Error
¶ 15 The State contends we should hold the error in applying a procedure for which the court had, as yet, no authority was harmless, because that authority was indeed granted and to repeat the very same procedure employed the first time would be a waste of judicial resources.
¶ 16 The logic of the State's argument is undeniable. Given the nature of the ongoing pattern of abuse allegation, resentencing will require a lengthy hearing at which Applegate's victims will be asked to repeat painful testimony. However, our Supreme Court has clearly and consistently refused to hold such errors harmless. In Hall, the court explained:
The exceptional sentencing provisions in effect [at the time of the] offense directed that the trial court find aggravating circumstances by a preponderance of the evidence. The legislature's explicit assignment of the finding to the trial court precluded assigning the finding to the jury. Its designation of the standard of proof as a preponderance precluded requiring proof beyond a reasonable doubt. Since it would have been procedurally impossible to obtain a constitutionally valid jury finding, the error in this case cannot be deemed harmless.[19]
Since Applegate's case arose under the same circumstances, the same conclusion here is inescapable.[20] We cannot hold the court's error harmless.

Other Sentencing Issues
¶ 17 Applegate contends that the ongoing pattern of pattern of sexual abuse and ongoing pattern of domestic violence aggravators alleged by the State are unconstitutionally vague as applied to his case, that the allegation that the offense resulted in the pregnancy of a child victim of rape was not supported by substantial evidence during the trial, and that an exceptional sentence based upon the domestic violence and pregnancy aggravators violates the ex post facto clause because they were not codified until after Applegate's crimes were committed. Because these aggravators may not be at issue on remand, we do not reach these claims.

Jury Bias and Misconduct
¶ 18 Applegate contends juror bias and an inappropriate conversation between jurors deprived him of a fair trial. Applegate moved for a mistrial after one juror stated he had overheard a conversation between two other jurors expressing surprise that Applegate did not plead guilty and speculating about the cost of his trial to the county.
¶ 19 "[W]hether to grant a motion for a mistrial is a matter addressed to the sound discretion of the trial court, and that court's discretion will be overturned on appeal only for abuse of discretion."[21]
¶ 20 After separately interviewing each juror, the court concluded there was no prejudice.[22] Further, the court found "that the examination of all the jurors makes clear that the jurors understand their role, their need to be fair and impartial."[23] The court admonished the jury to keep an open mind, continue to presume the defendant innocent, and not to discuss the case amongst themselves. In denying the mistrial, the court *1005 explained that "even if the statement which Juror No. 5 believes he heard had been made, the court's instruction would be sufficient to remedy any harm."[24]
¶ 21 Applegate's argument is premised on the assertion that one juror's testimony concerning the overheard conversation was not credible. This court is not in a position to assess credibility.[25] We see no abuse of discretion.

CONCLUSION
¶ 22 We reject Applegate's argument concerning jury misconduct. We decline to reach his argument regarding speedy trial.[26] We thus affirm his conviction. Because the trial court lacked authority to submit the aggravating factors for jury determination and this error was not harmless, we remand for resentencing. If the State pursues an exceptional sentence on remand, the provisions of the 2007 amendment allowing jury determination of aggravating factors will apply.
¶ 23 The conviction is affirmed. The sentence is vacated and we remand for further proceedings consistent herewith.
WE CONCUR: DWYER, A.C.J., and APPELWICK, J.
NOTES
[1] Chapter 9.94A RCW.
[2] 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).
[3] Clerks Papers at 76.
[4] Former RCW 9.94A.537(2).
[5] 159 Wash.2d 459, 150 P.3d 1130 (2007).
[6] Id. at 469-70, 150 P.3d 1130 (citing State v. Hughes, 154 Wash.2d 118, 151-52, 110 P.3d 192 (2005); State v. Martin, 94 Wash.2d 1, 8, 614 P.2d 164 (1980)).
[7] Id. at 470, 150 P.3d 1130.
[8] This case was stayed pending decisions in Pillatos and State v. Davis, 163 Wash.2d 606, 184 P.3d 639 (2008), which held that a court erred by submitting aggravating factors for jury determination during the period between Blakely and the Blakely fix.
[9] See In re Pers. Restraint of Hall, 163 Wash.2d 346, 354, 181 P.3d 799 (2008); State v. Womac, 160 Wash.2d 643, 160 P.3d 40 (2007).
[10] LAWS OF 2007, ch. 205, § 1.
[11] 142 Wash.App. 777, 792, 175 P.3d 1139 (2008).
[12] Applegate also contends, in a section heading in his brief, that application of the 2007 amendment would violate the separation of powers doctrine. He provides no argument or authority on this point, which we therefore decline to address. RAP 10.3(a). We note, however, that Division Three of this court rejected the same argument in State v. Mann, ___ Wash.App. ___, 189 P.3d 843, 848 (2008).
[13] See Pillatos, 159 Wash.2d at 470-71, 150 P.3d 1130; McNeal, 142 Wash.App. at 794, 175 P.3d 1139.
[14] See Pillatos, 159 Wash.2d at 473, 150 P.3d 1130.
[15] Id. at 475, 150 P.3d 1130.
[16] McNeal, 142 Wash.App. at 794, 175 P.3d 1139.
[17] Id.
[18] Id. at 795, 175 P.3d 1139.
[19] 163 Wash.2d at 351-52, 181 P.3d 799. Accord Womac, 160 Wash.2d at 662-63, 160 P.3d 40; Hughes, 154 Wash.2d at 149, 110 P.3d 192.
[20] But see State v. Doney, 142 Wash.App. 450, 174 P.3d 1261 (2008) (where defendant had already had two jury determinations of aggravating factors, and remand would require a third, the error was harmless).
[21] State v. Tigano, 63 Wash.App. 336, 342, 818 P.2d 1369 (1991).
[22] The court stated, "We have a jury of 12 persons sitting together in close quarters. One juror believes that he heard a statement. None of the other jurors heard the statements that Juror No. 5 believes he heard. I believe that he could have heard something out of context." RP (Mar. 24, 2005) at 427.
[23] Id.
[24] Id. at 428.
[25] State v. Camarillo, 115 Wash.2d 60, 71, 794 P.2d 850 (1990) (credibility determinations are for the trier of fact and are not subject to review).
[26] Applegate claims he was denied his right to a speedy trial, but fails to assign error to the ruling made below, list the issue as required, or provide adequate argument or authority on this point. We decline to address it. RAP 10.3(a).